IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | | |
|---|---|---|
| Jerrold A. Watson & Sons, L.L.C. d/b/a Watsonia Farms, | ) ) ) | |
| Plaintiff, | ) ) | **LOCAL CIVIL RULE 26.03 RESPONSES** |
| -vs- | ) ) | |
| C.H. Robinson Company d/b/a Robinson Fresh, | ) ) ) | C.A. No. 8:16-cv-02833-HMH |
| Defendant. | ) | |

COMES NOW the Defendant C.H. Robinson Company d/b/a Robinson Fresh ("CHR"), by and through their undersigned counsel, and provide the following Local Civil Rule 26.03 responses:

(1)    A short statement of the facts of the case;

**RESPONSE:**

**Founded in 1905, C.H. Robinson Company ("C.H. Robinson") is a global third party logistics provider. In addition C.H. Robinson is in the produce sourcing business wherein it markets, buys, sells, and/or transports fresh produce.**

**In early 2015, C.H. Robinson was introduced to Plaintiff, a grower of organic produce, an area C.H. Robinson wished to expand. After a series of negotiations, C.H. Robinson and Plaintiff entered into a Marketing Agreement ("Agreement") whereby C.H. Robinson agreed to "endeavor to identify a viable market for [Plaintiff's produce] that meets its customers' quality and condition requirements . . ." for a commission fee of 8% of "the FOB price gross sales return." Importantly, under the Agreement (1) Plaintiff agreed**

to provide produce that met certain food safety standards, including the Global Food Safety Initiative ("GFSI") standard; and (2) C.H. Robinson agreed to try to find a viable market for such produce—conversely, C.H. Robinson did not in any way guaranty or promise that it would sell Plaintiff's produce, or a certain amount or volume of Plaintiff's produce.

Problems arose almost immediately after the Agreement was executed. First, Plaintiff was unable to provide produce that met the food safety standards set forth in the Agreement. Plaintiff did not meet the GFSI standard until July 14, 2015, months into the Spring growing season. Plaintiff also placed unreasonably high prices on its produce, making it difficult to sell Plaintiff's produce even after Plaintiff satisfied the GFSI standard. Moreover, the Agreement contained a "Customer Carve Out List," which prohibited C.H. Robinson from selling produce to numerous customers of Plaintiff. After the Agreement was executed, it became apparent that the "Customer Carve Out List" would make it difficult for C.H. Robinson to sell Plaintiff's organic produce, because the list included numerous significant buyers of organic produce.

Despite Plaintiff's failure to provide GFSI-approved produce and reasonable pricing, C.H. Robinson continued to work with Plaintiff to endeavor to identify viable markets for its produce during the Fall growing season. C.H. Robinson attempted to sell what it could, but was unable to sell Plaintiff's produce in substantial numbers. The parties' relationship ended by the end of 2015.

Plaintiff brought the present action against C.H. Robinson, essentially alleging that C.H. Robinson guaranteed or promised to sell large quantities of Plaintiff's produce, which Plaintiff alleges it relied on to cultivate over two hundred extra acres of land to meet these

**promised sales. C.H. Robinson made no such guaranty or promise, and the Agreement clearly memorializes the parties agreement that C.H. Robinson would "endeavor to identify a viable market for [Plaintiff's produce]," which Plaintiff agreed would satisfy food safety standards like the GFSI. C.H. Robinson fulfilled its obligations under the Agreement, and did endeavor to identify viable markets for Plaintiff's produce. Plaintiff, however, did not fulfill its obligations under the Agreement, in that Plaintiff did not provide GFSI-certified produce and did not provide reasonable pricing of its produce. Therefore, if there is a defaulting party under the Agreement, it is Plaintiff.**

(2)    The names of fact witnesses likely to be called by the party and a brief summary of their expected testimony;

**RESPONSE:**

**In addition to any witness identified by Plaintiff, C.H. Robinson may call the following witnesses:**

    **a.**    **Jerry Watson (Plaintiff)**

    **b.**    **Jeph Watson (Plaintiff)**

    **c.**    **Becca Watson (Plaintiff)**

    **d.**    **Diedrich Von Soosten (Plaintiff)**

    **e.**    **Tim Colin (Sostena)**

    **f.**    **Sean Callahan (C.H. Robinson)**

    **g.**    **Michael Castagnetto (C.H. Robinson)**

    **h.**    **John Pursel (C.H. Robinson)**

    **i.**    **Megan Arnold (C.H. Robinson)**

    **j.**    **Kristie Gilford (C.H. Robinson)**

 C.H. Robinson reserves the right to call additional witnesses as may arise through discovery.

>   (3)   The names and subject matter of expert witnesses (if no witnesses have been identified, the subject matter and field of expertise should be given as to experts likely to be offered);

**RESPONSE:**

 C.H. Robinson reserves the right to identify any expert witness or witnesses in accordance with the timeframe set by the applicable Scheduling Order.

>   (4)   A summary of the claims or defenses with statutory and/or case citations supporting the same;

**RESPONSE:**

Per the Agreement, this dispute will be governed by Minnesota law.

**Plaintiff's Claims:**

>   a.   *Breach of Contract*
>
>   To establish a breach of contract claim, a plaintiff must show that: (1) a contract was formed; (2) the plaintiff performed any conditions precedent; and (3) the defendant breached the contract. *Commercial Associates, Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 782 (Minn. Ct. App. 2006). Plaintiff must also establish that it has been damage by the alleged breach order to recover under a breach of contract claim. *Jensen v. Duluth Area YMCA*, 688 N.W.2d574, 579 (Minn. Ct. App. 2004). Plaintiff cannot recover for an alleged breach caused or contributed to by its own acts or omissions. Plaintiff also cannot recover for damages that were not proximately caused by the alleged breach. *See id.* ("[T]here can be no recovery for damages which are remote, conjectural, or speculative."). Plaintiff had no right to rely on C.H. Robinson, as C.H. Robinson did not promise or guaranty that it would sell Plaintiff's produce, let alone a certain number of volume of Plaintiff's produce.

>   b.   *Breach of Contract Accompanied by a Fraudulent Act*
>
>   Minnesota does not recognize a claim for breach of contract accompanied by a fraudulent act. Even assuming it did, Plaintiff's claim fails because it cannot establish the elements of fraud, including but not limited to Plaintiff's ignorance of the alleged falsity or reasonable reliance thereon and C.H.

4

Robinson's knowledge of the alleged falsity and intent that Plaintiff act thereon. Under Minnesota law, the elements of fraud include: (1) a false misrepresentation of a past or present material fact; (2) knowledge by the person making the false assertion that it is false or ignorance of the truth of the assertion; (3) an intention to induce the plaintiff to act or to justify the claimant to act; (4) the plaintiff must have been induced to act or justified in acting in reliance on the representation; and (5) the plaintiff must suffer damage proximately caused by the misrepresentation. *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000).

c.     *Violation of the South Carolina Unfair Trade Practices Act*

The South Carolina Unfair Trade Practices Act ("UTPA") does not apply, as Minnesota law governs this dispute. Under the Minnesota Unfair Trade Practice Act, Plaintiff's claims fail. *See* Minn. Stat. §§ 325D.09 to 325D.16 (limiting the definition of "trade practices" to which the Minnesota Unfair Trade Practices Act applies). The unlawful trade practices to which this statute applies includes misrepresentation of the nature of the business, misrepresentation of the quality, and misrepresentation as to the type of product. *See id.* And even assuming the UTPA applied, Plaintiff fails to establish the elements of the claim, including but not limited to impact on the public interest. "The [UTPA] is not available to redress a private wrong where the public interest is unaffected." *Nosack Enterprises, Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*, 290 S.C. 485, 479, 351 S.E.2d 347, 349 (Ct. App. 1986).

## C.H. Robinson's Counterclaim:

a.     *Breach of Contract*

To establish a breach of contract claim, a plaintiff must show that: (1) a contract was formed; (2) the plaintiff performed any conditions precedent; and (3) the defendant breached the contract. *Commercial Associates, Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 782 (Minn. Ct. App. 2006). A plaintiff must also establish that it has been damage by the alleged breach in order to recover under a breach of contract claim. Jensen v. Duluth Area YMCA, 688 N.W.2d574, 579 (Minn. Ct. App. 2004). Moreover, under the duty of good faith and fair dealing, "parties to a contract may not unjustifiably impede the other party from performing its obligations under the contract." *Semler Constr., Inc. v. City of Hanover*, 667 N.W.2d 457, 467 (Minn. Ct. App. 2003). Plaintiff cannot recover when it has breached the contract or impeded the performance of C.H. Robinson.

b.    *Declaratory Judgment*

**Under Minnesota law, "[w]hen the intent of the parties can be determined from the writing of the contact, the construction of the instrument is a question of law for the court to resolve."** *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minnesota*, **671 N.W.2d 213, 221 (Minn. Ct. App. 2003). This contract is not ambiguous, therefore any construction of the terms of the contract is a question of law.**

(5)    Absent special instructions from the assigned judge, the parties shall propose dates for the following deadlines listed in Local Civil Rule 16.02:

(a)    Exchange of Fed. R. Civ. P. 26(a)(2) expert disclosures; and

(b)    Completion of discovery.

**RESPONSE:**

**C.H. Robinson will adhere to the deadlines set by the applicable Scheduling Order.**

(6)    The parties shall inform the Court whether there are any special circumstances which would affect the time frames applied in preparing the scheduling order. *See generally* Local Civil Rule 16.02(C) (Content of Scheduling Order).

**RESPONSE:**

**None known at this time**

(7)    The parties shall provide any additional information requested in the Pre-Scheduling Order (Local Civil Rule 16.01) or otherwise requested by the assigned judge.

**RESPONSE:**

**None known at this time**

Respectfully submitted,

s/ Jason D. Maertens
Robert D. Moseley, Jr. (#5526)
Jason D. Maertens (#10144)
Emily I. Bridges (#12258)

6

Smith Moore Leatherwood LLP
2 West Washington Street, Suite 1100 (29601)
Post Office Box 87
Greenville, South Carolina 29602-0087
(864) 751-7600
(864) 751-7800
rob.moseley@smithmoorelaw.com
jason.maertens@smithmoorelaw.com
emily.bridges@smithmoorelaw.com

*Attorneys for Defendant C.H. Robinson Company*
*d/b/a Robinson Fresh*

September 28, 2016