IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | |
|---|---|
| Jerrold A. Watson & Sons, L.L.C. d/b/a Watsonia Farms, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| -vs- | ) C.A. No. 8:16-cv-02833-HMH<br>) |
| C.H. Robinson Company d/b/a Robinson Fresh, | )<br>)<br>) |
| Defendant. | )<br>) |

**C.H. ROBINSON COMPANY d/b/a ROBINSON FRESH'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION**

Defendant C.H. Robinson Company d/b/a Robinson Fresh ("Robinson Fresh") submits this Reply to the Memorandum in Opposition to Defendant's Motion for Summary Judgment as to the Fourth Cause of Action for Negligent Misrepresentation of Plaintiff Jerrold A. Watson & Sons, L.L.C. d/b/a Watsonia Farms ("Watsonia").[1]

**GENERAL RESPONSE TO PLAINTIFF'S MEMORANDUM**

Watsonia continues to ignore the express terms and conditions of the Marketing Agreement, and for good reason. Under the Marketing Agreement, Watsonia warranted and represented that it would provide Robinson Fresh with organic produce certified by a GFSI approved auditor, and Watsonia breached this warranty and representation. Further, under the Marketing Agreement, Watsonia agreed that if the parties did not agree upon pricing, then

---

[1] Robinson Fresh incorporates by reference its Motion and Memorandum in Support of Summary Judgment [ECF Nos. 45 & 45-1] and Reply [ECF No. 52], including all exhibits.

Robinson Fresh had no obligation to attempt to market Watsonia's produce. Because the parties did not agree upon pricing, by the express terms of the marketing agreement Robinson Fresh was not obligated to attempt to market Watsonia's produce. Thus, Watsonia argues everything *but* the express terms and conditions of the Marketing Agreement. This includes not only a concocted narrative in which Robinson Fresh somehow "schemed" Watsonia in order to "take over" Watsonia's customers, but also purported statements made by Robinson Fresh prior to the execution of the Marketing Agreement that contradict the terms and conditions of the Marketing Agreement. In the end, however, this is a commercial contract dispute between two sophisticated entities. Watsonia does not like the terms and conditions of the arms-length transaction that it negotiated and agreed to and, therefore, resorts to conspiracy and purported pre-agreement discussions, which it now claims are negligent misrepresentations. Watsonia's new negligent misrepresentation claim should be rejected.

## RESPONSE TO SPECIFIC ISSUES RAISED IN PLAINTIFF'S MEMORANDUM

### I.     Minnesota Law Applies

Minnesota law governs this dispute, including Watsonia's negligent misrepresentation claim. The Marketing Agreement contains a clear choice of law provision dictating that Minnesota law applies to this dispute. [ECF No. 45-2 ¶ 11]. South Carolina courts respect choice of law provisions agreed upon by the parties. *See Team IA, Inc. v. Lucas*, 717 S.E.2d 103, 108 (S.C. Ct. App. 2011). Moreover, this Court has found that a contractual choice of law provision extends to a negligent misrepresentation claim. *See CitiSculpt, LLC v. Advanced Comm. Credit Int'l (ACI)*, No. 6:17-cv-69-BHH, 2017 WL 660833, at *2 (D.S.C. Feb. 17, 2017).

Watsonia does not even address this issue, let alone provide legal support for why Minnesota law should not govern this dispute. This is likely because Watsonia has already

admitted the Marketing Agreement is governed by Minnesota law.[2] [ECF No. 45-5, ¶ 7]. Under Minnesota law, "where adversarial parties negotiate at arms' length, there is ***no duty*** imposed such that a party could be liable for negligent misrepresentation." *Smith v. Woodwind Homes, Inc.*, 605 N.W.2d 418, 424 (Minn. Ct. App. 2000) (emphasis added). Here, the parties negotiated the Marketing Agreement at arms-length. Watsonia's principals reviewed the agreement drafts and Diedrich Von Soosten reviewed and made revisions to the agreement drafts. Thus, under Minnesota law, no duty can be imposed on Robinson Fresh for negligent misrepresentation. Watsonia does not contest this.

Even assuming South Carolina law applies, which is denied, Robinson Fresh is still entitled to summary judgment. The sole case cited by Watsonia, *AMA Management Corp. v. Strasburger*, 420 S.E.2d 869 (S.C. Ct App. 1992), is instructive. In *Strasburger*, the subject agreement did not include a written warranty that certain guaranties were valid. The plaintiff argued that as inducement to enter the contract, the defendant orally assured the plaintiff that the guaranties were valid. After the contract was executed, the validity of the guaranties was called into question. The plaintiff asserted a negligent misrepresentation claim against the defendant based on the oral assurance made by a representative of the defendant during the negotiation of the contract that the guaranties were valid. The South Carolina Court of Appeals held the oral assurance did not establish a claim for negligent misrepresentation. The court noted, the plaintiff was a sophisticated party "engaged in arm's length bargaining in which it was the initiating party, it was acting with professional legal advice, it understood that each party was seeking its

---

[2] Watsonia has also waived this issue. *See* Fed. R. Civ. P. 36(b) ("A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."); *Dulansky v. Iowa-Illinois Gas & Elec. Co.*, 92 F. Supp. 118, 124 (S.D. Iowa 1950) ("It is, of course, fundamental that a person is estopped to deny the truth of his responses for the purposes of the action, including a response evidencing lack of information.")

own commercial advantage, it knew that each party was expected to exercise due diligence to protect its own interests, and it knew that each party must make its own calculations of risk." *Id.* at 875. The court further explained the plaintiff could not take the oral assurance by the defendant's representative that the guaranties were valid and "create a liability by operation of law that [the defendant] would not undertake by contract." *Id.* The court said the oral assurance "could not reasonably be relied upon as a substitute for a contractual warranty concerning the guaranties." *Id.*

Like the plaintiff in *Strasburger*, Watsonia is attempting to take alleged oral assurances by Robinson Fresh representatives during contract negotiations and create liability that Robinson Fresh did not agree to undertake by contract. Like the plaintiff in *Strasburger*, Watsonia engaged in an arms-length negotiation with Robinson Fresh, received professional advice from Mr. Von Soosten, understood that each party was seeking its own commercial advantage, and knew that each party was responsible for accepting possible risks associated with this negotiated agreement, including the risk that the parties could not agree upon pricing. Thus, under *Strasburger*, Watsonia cannot create liability from the purported oral statements made by Robinson Fresh representatives during contract negotiations. Watsonia also cannot reasonably rely on these alleged statements, because they contradict the terms of the contract itself. Consequently, even assuming South Carolina law applies, Watsonia fails to establish a claim for negligent misrepresentation as a matter of law.[3]

---

[3] Watsonia also fails to establish a negligent misrepresentation claim not only because there was no "special relationship" between Watsonia and Robinson Fresh that did not arise out of a contract, *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 463 S.E.2d 85, 88 (S.C. 1995), but also because Watsonia cannot seek in tort damages for economic loss that arise out of a breach of contract. *Kennedy v. Columbia Lumber & Mfg. Co.*, 384 S.E.2d 730, 737 (S.C. 1989).

## II.    Parol Evidence Is Inadmissible

The parol evidence rule bars any purported statements made by Robinson Fresh representatives prior to the execution of the contract. "[T]he terms of a final and integrated written expression may not be contradicted by parol evidence of previous understandings and negotiation … for the purpose of varying or contradicting the writing." *Apple Valley Red-E-Mix, Inc. v. Mills-Winfield Eng'g Sales, Inc.*, 436 N.W.2d 121, 123 (Minn. Ct. App. 1989) (internal quotations omitted). The parol evidence rule "prohibits the admission of extrinsic evidence of prior or contemporaneous oral agreements, or prior written agreements, to explain the meaning of a contract when the parties have reduced their agreement to an unambiguous integrated writing." *Danielson v. Danielson*, 721 N.W.2d 335, 338 (Minn. Ct. App. 2006).

The parol evidence rule exists for circumstances like this—where one party is attempting to ignore or modify the express terms of a complete written agreement in order to avoid its contractual obligations. *See* 11 *Williston on Contracts* § 33:1 (4th ed.) ("[The parol evidence rule] seeks to achieve the related goals of ensuring that the contracting parties, whether as a result of miscommunication, poor memory, fraud, or perjury, will not vary the terms of their written undertakings, thereby reducing the potential for litigation.").

Watsonia completely ignores this issue. (The word "parol" does not even appear in Watsonia's opposition brief to this or the original motion for summary judgment). Watsonia provides no legal support for why the parol evidence rule does not apply to bar the alleged statements made by Robinson Fresh prior to the execution of the Marketing Agreement. Therefore, this argument has been conceded. *See Bancoult v. McNamara*, 227 F. Supp. 2d 144, 149 (D.C. 2002) ("[I]f the opposing party files a responsive memorandum but fails to address

certain arguments made by the moving party, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.").

Accordingly, the parol evidence rule applies and bars the admission of any prior or contemporaneous statements allegedly made by representatives of Robinson Fresh. *See Karger v. Wangerin*, 40 N.W.2d 846, 849 (Minn. 1950) ("Antecedent and contemporaneous utterances are excluded, not because they are lacking in evidentiary value, but because the law for substantive reasons declares that such matter shall not be shown. If the rule were otherwise, there would be an absurd futility in written contracts which it is the purpose of the parol evidence rule to prevent."). Watsonia and Robinson Fresh entered into a written contract after engaging in a series of negotiations, and any alleged statements made prior to the execution of the contract are barred by the parol evidence rule. Therefore, Robinson Fresh is entitled to judgment as a matter of law on Watsonia's cause of action for negligent misrepresentation. *See Maday v. Grathwohl*, 805 N.W.2d 285, 289 (granting summary judgment on negligent misrepresentation claim because of inadmissibility of parol evidence).

### III.    Watsonia Cannot Rely on Robinson Fresh's Internal Communications to Support Its Claim for Negligent Misrepresentation

Watsonia cites to a number of internal Robinson Fresh emails and communications presumably to support its claim for negligent misrepresentation. However, a claim for negligent misrepresentation must be based on statements made *to* Watsonia, not Robinson Fresh's internal discussions, thoughts, or comments. *See Williams v. Smith*, 820 N.W.3d 807, 815 (Minn. 2012) (one element of negligent misrepresentation is false information provided *to* the plaintiff). Watsonia relies almost exclusively on internal emails and communications produced by Robinson Fresh during the course of discovery. These emails were not sent to Watsonia and, therefore, should not be considered.

6

**IV.     The Remaining Alleged Misrepresentations are Contradicted by the Terms of the Marketing Agreement**

Not including these internal emails, the only alleged misrepresentations made by Robinson Fresh are that (1) it had customers to whom it could sell Watsonia's produce, (2) Watsonia's food safety certifications were enough, and (3) Watsonia was not required to provide organic produce approved by a GFSI approved auditor. These alleged misrepresentations are barred by the parol evidence rule (again, an argument Watsonia simply ignores) and, therefore, do not create a genuine dispute of material fact. Further, these alleged misrepresentations contradict the express terms of the Marketing Agreement itself.

- The Marketing Agreement does not say Robinson Fresh has already existing customers to whom it can sell Watsonia's produce. Rather, the Marketing Agreement says Robinson Fresh will "endeavor to *identify* a viable market for [Watsonia's organic produce] … and shall market such [Watsonia's organic produce] to such *new customers*." (ECF No. 45-2, Marketing Agreement, ¶ 5.a. (emphasis added)).

- The Marketing Agreement does not say Watsonia's food safety certifications are enough or that Watsonia is not required to provide Robinson Fresh with organic produce certified by a GFSI approved auditor. Rather, under the Marketing Agreement, Watsonia warrants and represents that *all* organic produce provided to Robinson Fresh will be approved by a GFSI approved auditor. (ECF No. 45-2, Marketing Agreement, ¶ 2.b. & ¶ 2.b.v. (emphasis added)).

The express terms of the Marketing Agreement, which Watsonia reviewed, revised, and negotiated, contradict the purported statements made by Robinson Fresh. Watsonia's attempt to unravel the agreed-upon terms because it does not like what they say should be rejected. *See, e.g., Ross Engineering Co. v. Pace*, 153 F.2d 35, 42-43 (4th Cir. 1946) ("[I]t would be a violation

7

of the established rule that any agreement made or opinion expressed in previous parol negotiations as to the terms or legal effect of a subsequent written agreement does not prevail over the provisions thereof in the absence of some artifice or fraud.").

## CONCLUSION

Robinson Fresh respectfully requests that this Court grant Robinson Fresh's Motion for Summary Judgment on Plaintiff's Cause of Action for Negligent Misrepresentation.

        Respectfully submitted,

        s/ Jason D. Maertens
        Steven E. Farrar (#770)
        Jason D. Maertens (#10144)
        Emily I. Bridges (#12258)
        Smith Moore Leatherwood LLP
        2 West Washington Street, Suite 1100 (29601)
        Post Office Box 87
        Greenville, South Carolina 29602-0087
        (864) 751-7600
        (864) 751-7800
        steve.farrar@smithmoorelaw.com
        jason.maertens@smithmoorelaw.com
        emily.bridges@smithmoorelaw.com

        *Attorneys for Defendant C.H. Robinson Company d/b/a Robinson Fresh*

September 20, 2017