IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | |
|---|---|
| Jerrold A. Watson & Sons, L.L.C., d/b/a Watsonia Farms, | ) ) ) C.A. No. 8:16-2833-HMH |
| Plaintiff, | ) ) ) |
| vs. | ) **OPINION & ORDER** |
| C.H. Robinson Company d/b/a Robinson Fresh, | ) ) ) ) |
| Defendant. | ) |

This matter is before the court on the motions of C.H. Robinson Company d/b/a Robinson Fresh ("Robinson Fresh") for summary judgment. For the reasons set forth below, the court grants Robinson Fresh's motions for summary judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of an April 2015 Marketing Agreement ("Agreement") between Robinson Fresh and Jerrold A. Watson & Sons, L.L.C. d/b/a Watsonia Farms ("Watsonia") for Robinson Fresh to market and sell organic produce grown by Watsonia. (Mem. Supp. Mot. Summ. J. 1, ECF No. 45-1.) The Agreement required Robinson Fresh to market Watsonia's produce to new customers and, in the event the parties agreed upon a price, to purchase certain minimum volumes per week. (Id. Ex. 1 (Marketing Agreement Ex. B), ECF No. 45-2.) Robinson Fresh alleges that it was unable to sell Watsonia's produce because the parties could not agree upon a price and Watsonia failed to timely complete an annual food safety audit. (Id. at 2, 6, ECF No. 45-1.)

1

Watsonia alleges that Robinson Fresh never objected to the prices for the produce and raised the issue of the annual food safety audit in an effort to force Watsonia into allowing Robinson Fresh to market to Watsonia's existing customers, which was forbidden by the Agreement. (Resp. Opp'n Mot. Summ. J. 6, 8, 11, ECF No. 50.) (Mot. Summ. J. Ex. 1 (Marketing Agreement 3), ECF No. 45-2.) Further, Watsonia alleges that Robinson Fresh did not raise the issue of the annual food safety audit until early June 2015, two months after the parties entered into the Agreement. (Resp. Opp'n Mot. Summ. J. 8, ECF No. 50.) Ultimately, Robinson Fresh sold produce to only one customer, Market Basket, an existing customer of Watsonia in late September 2015. (Id. at 5, ECF No. 50.) Watsonia had Robinson Fresh's permission to contact Market Basket. (Id., ECF No. 50.)

In December 2015, Watsonia sent Robinson Fresh a letter demanding that Robinson Fresh pay a portion of the costs associated with additional acres that Watsonia had planted for the 2015 harvest based upon Robinson Fresh's failure to buy its produce. (Mem. Supp. Mot. Summ. J. 7, ECF No. 45-1.) Robinson Fresh refused, alleging it was not required to do so by the Agreement. (Id., ECF No. 45-1.)

On July 26, 2016, Watsonia filed the instant case in the Court of Common Pleas of Saluda County, South Carolina, alleging claims for breach of contract, breach of contract accompanied by fraudulent act, and violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"). (Not. Removal Ex. 1 (State Ct. Docs. 6-12), ECF No. 1-1.) Robinson Fresh removed the action to this court on the basis of diversity jurisdiction on August 15, 2016. (Id. at 2, ECF No. 1.) Robinson Fresh filed the instant motion for summary judgment on July 19, 2017. (Mot. Summ. J., ECF No. 45.) Watsonia responded in opposition on August 3, 2017.

(Resp. Opp'n Mot. Summ. J., ECF No. 50.)  Robinson Fresh replied on August 9, 2017.  (Reply Supp. Mot. Summ. J., ECF No. 52.)  Watsonia amended its complaint to add a negligent misrepresentation claim on August 11, 2017.  (Am. Compl., ECF No. 55.)  Robinson Fresh filed an answer to the amended complaint on August 17, 2017.  (Answer, ECF No. 57.)  Robinson Fresh filed a motion for summary judgment on the negligent misrepresentation claim on September 6, 2017.  (Mot. Summ. J., ECF No. 63.)  Watsonia responded in opposition on September 15, 2017.  (Resp. Opp'n Mot. Summ. J., ECF No. 66.)  Robinson Fresh replied on September 20, 2017.  (Reply Supp. Mot. Summ. J., ECF No. 67.)  This matter is ripe for consideration.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).  "[W]here the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, disposition by summary judgment is appropriate." Monahan v. Cty. of Chesterfield, Va., 95 F.3d 1263, 1265 (4th Cir. 1996) (internal quotation marks and citation omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (internal quotation marks and citation omitted).

### B. Motion For Summary Judgment

### 1. Breach of Contract

Robinson Fresh moves for summary judgment on Watsonia's breach of contract claim arguing it has not breached the Agreement because there was never any agreement on price. Further, Robinson Fresh alleges that Watsonia failed to complete the annual food safety audit, which constituted a breach of a condition precedent to the contract, Robinson Fresh did not agree to pay for the costs associated with Watsonia's decision to plant additional acreage, and Watsonia's claimed damages are speculative. (Mem. Supp. Mot. Summ. J. 8-16, ECF No. 45-1.) In response, Watsonia argues that there is a genuine issue as to whether a mutually agreed price was reached, Robinson Fresh waived the annual food safety audit requirement by failing to timely assert the requirement, and Watsonia's damages calculations are reasonable. (Resp. Opp'n Mot. Summ. J. 18-20, ECF No. 50.)

Under Minnesota law[1], the elements of a breach of contract claim are "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co., 848 N.W.2d 539, 543 (Minn. 2014) (internal quotation marks omitted). A condition precedent

> is one which is to be performed before the agreement of the parties becomes operative. A condition precedent calls for the performance of some act or the happening of some event after the contract is entered into, and upon the performance or happening of which its obligation is made to depend.

Nat'l Union Fire Ins. v. Schwing Am., Inc., 446 N.W.2d 410, 412 (Minn. Ct. App. 1989) (quoting Lake Co. v. Molan, 131 N.W.2d 734, 740 (Minn. 1964)). "When a contract contains a condition precedent, a party to the contract does not acquire any rights under the contract unless the condition occurs." Id.

Watsonia does not dispute that the Agreement sets forth a condition precedent regarding price. (Resp. Opp'n Mot. Summ. J. 10, ECF No. 50.) The Agreement provides

> Jerrold Watson of Watsonia Farms and John Pursel of Robinson Fresh will establish FOB prices . . . on a daily basis in writing via email. . . . It is also mutually understood that a lack of mutually agreed upon pricing by both Parties may impact Robinson Fresh's ability to sell their Weekly Goal Volume; accordingly, in this situation, Robinson Fresh shall not be held financially responsible for any shortfall of Weekly Goal Volume not sold.

(Mot. Summ. J. Ex. 1 (Marketing Agreement Ex. B), ECF No. 45-2.) Thus, the Agreement required that the price for organic produce be "mutually agreed upon" by Watsonia and

---

[1] The parties agree that Minnesota law governs the breach of contract action because the marketing agreement contained a choice of law provision selecting Minnesota law as the applicable law. See Team IA, Inc. v. Lucas, 717 S.E.2d 103, 108-09 (S.C. Ct. App. 2011) (noting that under South Carolina choice of law principles, parties may specify the law under which a contract will be governed).

Robinson Fresh to hold Robinson Fresh "financially responsible" for the weekly goal volumes. (Id., ECF No. 45-2.)

Watsonia contends that there was mutual agreement as to price based on the price quotes offered by Jerrold Watson by telephone to John Pursel. (Resp. Opp'n Mot. Summ. J. 10-12, ECF No. 50.) However, Jerrold Watson admitted in his deposition that John Pursel never mutually agreed upon a price. (Mot. Summ. J. Ex. 7 (Jerrold Watson Dep. 106-07), ECF No. 45-8.) Further, John Pursel submits that "[a]t no time did [he] agree with Jerry Watson on the pricing of the organic produce offered by him." (Id. Ex. 6 (Pursel Aff. ¶ 13), ECF No. 45-7.) The Agreement required price to be established "on a daily basis in writing via email." (Id. Ex. 1 (Marketing Agreement Ex. B), ECF No. 45-2.) Watsonia alleges that John Pursel accepted the price quote when he did not object to it by telephone. (Resp. Opp'n Mot. Summ. J. 10-12, ECF No. 50.) "Ordinarily, mere silence does not amount to an acceptance." Grandoe Corp. v. Gander Mountain Co., 761 F.3d 876, 887 (8th Cir. 2014) (citing Gryc v. Lewis, 410 N.W.2d 888, 892 (Minn. Ct. App. 1987)). "More generally, an acceptance must be communicated in a manner that is reasonable in the circumstances." Id. (citing Minn. Stat. Ann. § 336.2-206).

Based on the record before the court, the court finds that a price was not mutually agreed to by Robinson Fresh and Watsonia. Watsonia never complied with the requirement set forth in the Agreement for setting price and John Pursel's silence is insufficient to show that he agreed to the price. Therefore, the condition precedent in the Agreement to mutually agree upon a price was not satisfied. Thus, the Agreement never became operative. Based on the foregoing, the court grants Robinson Fresh's motion for summary judgment for the breach of contract claim.

**2. Breach of Contract Accompanied by a Fraudulent Act and Violation of the SCUTPA**

Robinson Fresh contends that Watsonia's breach of contract accompanied by a fraudulent act and the SCUTPA claims must be dismissed because pursuant to the choice of law provision in the Agreement, Minnesota law applies, and Minnesota law does not recognize a cause of action for breach of contract accompanied by a fraudulent act or violation of the SCUTPA. (Mem. Supp. Mot. Summ. J. 20-22, ECF No. 45-1.) Further, Robinson Fresh contends that even if South Carolina law applies, Watsonia fails to allege that Robinson Fresh committed a fraudulent act separate and distinct from the alleged breach of contract sufficient to state a claim for breach of contract accompanied by a fraudulent act. (Id., ECF No. 45-1.)

**a. Choice of Law**

Robinson Fresh argues that Minnesota law applies to Watsonia's claims for breach of contract accompanied by a fraudulent act and violation of the SCUTPA. Paragraph 11 of the Agreement provides that "[t]his Agreement will be governed by the laws of the State of Minnesota." (Mot. Summ. J. Ex. 1 (Marketing Agreement 7), ECF No. 45-2.) Choice of law determinations are questions of law. Waterfowl Ltd. Liab. Co. v. United States, 473 F.3d 135, 141 (5th Cir. 2006); Kielar v. Granite Constr. Co., 647 F. Supp. 2d 524, 527 (D. Md. 2009) ("Choice of law questions are generally questions of law.") A federal court sitting in diversity must apply the choice of law rules of the forum state. CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009). "Generally, under South Carolina choice of law principles, if the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law." Nucor Corp. v. Bell, 482 F. Supp. 2d 714, 728 (D.S.C. 2007) (citation omitted). Further, "absent a strong public policy reason . . . [a] choice of law

provision will be honored" under South Carolina law. Russell v. Wachovia Bank, N.A., 578 S.E.2d 329, 336 (S.C. 2003).

Watsonia contends that South Carolina law applies to the breach of contract accompanied by a fraudulent act and the SCUTPA claim under the choice of law principles applicable to torts. (Resp. Opp'n Mot. Summ. J. 19-21, ECF No. 50.) "An action for breach of contract accompanied by a fraudulent act is an action ex contractu, not ex delicto; however, it partakes of elements of both contract and tort." Peeples v. Orkin Exterminating Co., 135 S.E.2d 845, 847 (S.C. 1964) (internal citations omitted). A claim for breach of contract accompanied by a fraudulent act is not a separate tort-based theory of recovery that would avoid the contractual choice of law provision. Palmetto Health Credit Union v. Open Solutions, Inc., No. 3:08-cv-3848-CMC, 2010 WL 2710551, at *5 n.8 (D.S.C. Jul. 7, 2010) (unpublished) ("Under South Carolina law, proof of a fraudulent act accompanying a breach of contract provides a basis for enhancing damages for breach of contract. It is not . . . a separate tort-based theory of recovery which might survive the contractual choice-of-law provision."). Further, the SCUPTA claim is subject to exclusion because the choice of law provision provides that Minnesota law governs. See PCJ Franchising Co., LLC v. Newsome, No. 7:08-CV-41-BO, 2008 WL 4772191, at *2 (E.D.N.C. Oct. 28, 2008) (dismissing South Carolina Unfair Trade Practices Act claims on the basis of a North Carolina choice of law provision). The Agreement at issue provides specifically that Minnesota law applies. Therefore, Minnesota law applies unless enforcing the choice of law provision results in a violation of the strong public policy of South Carolina.

Watsonia does not argue that the choice of law provision violates the strong public policy of South Carolina. Nevertheless, the issue is whether the choice of law provision violates

any strong public policy of South Carolina, where the state law designated in the Agreement does not recognize the theory of recovery alleged by the plaintiff.

> [U]nder the public policy exception, the Court will not apply foreign law if it violates the public policy of South Carolina. [F]oreign law may not be given effect in this State if it is against good morals or natural justice. Examples of cases against good morals and natural justice are prohibited marriages, wagers, lotteries, racing, contracts for gaming or the sale of liquors, and others. [T]he fact that the law of two states may differ does not necessarily imply that the law of one state violates the public policy of the other.

Nash v. Tindall Corp., 650 S.E.2d 81, 83-84 (S.C. Ct. App. 2007) (internal quotation marks and citations omitted). It is not uncommon for application of the laws of one state to conflict with another and for the conflict to result in the dismissal of a claim. See e.g., Palmetto Health, 2010 WL 2710551, at *5-6 (dismissing breach of contract accompanied by a fraudulent act and SCUTPA claims because Connecticut, the controlling law pursuant to choice of law provision, did not recognize this cause of action).

There is no evidence of a strong public policy in South Carolina that would warrant disregarding a choice of law provision because a cause of action is not available under the chosen law. Further, the parties do not dispute that Minnesota does not recognize a cause of action for breach of contract accompanied by a fraudulent act and a SCUTPA claim. Based on the foregoing, the court grants Robinson Fresh's motion for summary judgment on the breach of contract accompanied by a fraudulent act and SCUTPA claims.[2]

---

[2]Having found that Minnesota law applies, the court declines to address Robinson Fresh's remaining arguments in favor of dismissal of the breach of contract accompanied by a fraudulent act claim and violation of the SCUTPA.

### 3. Negligent Misrepresentation

Robinson Fresh moves for summary judgment on Watsonia's negligent misrepresentation claim arguing that if Minnesota law governs, the negligent misrepresentation claim fails as a matter of law because Robinson Fresh did not owe a duty of care to Watsonia. (Mem. Supp. Mot. Summ. J. 4, ECF No. 63-1.)  In the alternative, Robinson Fresh argues that if South Carolina law governs, the negligent misrepresentation claim is barred by the economic loss doctrine.  (Id. at 7, ECF No. 63-1.)  Robinson Fresh asserts that Minnesota law should govern under the choice of law provision.  (Id. at 2, ECF No. 63-1.)  Watsonia contends that South Carolina law should apply because it is a tort-based claim.  (Resp. Opp'n Mot. Summ. J. 7, ECF No. 66.)

Generally, negligent misrepresentation claims are viewed as a hybrid tort and contract claim.  CitiSculpt, LLC v. Advanced Commercial Credit Int'l (ACI) Ltd., Civil Action No.: 6:17-sc-69-BHH, 2017 WL 660833, at *2 (D.S.C. Feb. 17, 2017).  As noted above, "South Carolina generally respects choice of law provisions, . . . and appears to recognize that a contract's choice of law provision can extend to tort claims."  Charleston Marine Containers Inc. v. Sherwin-Williams Co., 165 F. Supp. 457, 468 (D.S.C. 2016) (internal citations omitted).  However, Watsonia alleges that the misrepresentations occurred prior to entering into the Agreement.  (Resp. Opp'n Mot. Summ. J. 2-6, ECF No. 66.)  Because the alleged misrepresentations predate the Agreement and the choice of law provision contained therein, the court finds that South Carolina law applies to Watsonia's negligent misrepresentation claim. See Palmetto Health, 2010 WL 2710551, at *2 (assuming South Carolina law applies to

10

negligent misrepresentations predating the entry of an Agreement with a choice of law provision designating law of another state).

Under South Carolina law, a claim for negligent misrepresentation requires a plaintiff to prove the following six elements:

> (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation.

Quail Hill, LLC v. County of Richland, 692 S.E.2d 499, 508 (S.C. 2010). "A duty to exercise reasonable care in giving information exists when the defendant has a pecuniary interest in the transaction." Gilliland v. Elmwood Props., 391 S.E.2d 577, 580 (S.C. 1990) (quoting Winburn v. Ins. Co. of North America, 399 S.E.2d 142, 146 (S.C. Ct. App. 1985)). "The recovery of damages may be predicated upon a negligently made false statement where a party suffers either injury or loss as a consequence of relying upon the misrepresentation." Id. (quoting Winburn, 399 S.E.2d at 146).

A negligent misrepresentation claim cannot be based on "unfulfilled promises or statements as to future events." Tom Hughes Marine, Inc. v. Am. Honda Motor Co., 219 F.3d 321, 324-25 (4th Cir. 2000) (internal quotations omitted). An exception to this general rule "exists only when a person makes a promise having at the time no intention of keeping [the] agreement." Id. at 325 (internal quotations omitted).

Robinson Fresh contends that Watsonia's negligent misrepresentation claim is barred by South Carolina's economic loss doctrine. (Mem. Supp. Mot. Summ. J. 7-9, ECF No. 63-1.)

The theory behind the economic loss rule is that commercial entities entering into a contract have the opportunity to allocate risk, "whereas tort risks are assigned as a matter of law." Myrtle Beach Pipeline Corp. v. Emerson Elec. Co., 843 F. Supp. 1027, 1049 (D.S.C. 1993), aff'd, 46 F.3d 1125 (4th Cir. 1995). To allow a party to recover in tort what he cannot recover in contract permits that party to obtain a better bargain than he purchased. Purvis v. Consol. Energy Prods. Co., 674 F.2d 217, 221 (4th Cir. 1982).

"In most instances, a negligence action will not lie when the parties are in privity of contract. When, however, there is a special relationship between the alleged tortfeasor and the injured party not arising in contract, the breach of that duty of care will support a tort action." Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc., 463 S.E.2d 85, 88 (S.C. 1995). "For example, South Carolina courts have permitted negligence actions to proceed against engineers and lawyers based on their professional duties to plaintiffs." Palmetto Linen Service, Inc. v. U.N.X., Inc., 205 F.3d 126, 129 (4th Cir. 2000). Therefore, Watsonia must establish a special relationship arising separately from the Agreement to support an action for negligent misrepresentation.

Robinson Fresh argues that Watsonia's negligent misrepresentation claim "sound[s] in contract, not tort." (Mem. Supp. Mot. Summ. J. 8, ECF No. 63-1.) In support, Robinson Fresh states that Watsonia makes the same allegations and damages claims in support of its breach of contract claim. (Id., ECF No. 63-1.) Watsonia claims that Robinson Fresh falsely stated it had new customers to buy produce and the previous food safety certifications were sufficient. (Resp. Opp'n Mot. Summ. J. 2-3, ECF No. 66.) In addition, Watsonia alleges Robinson Fresh failed to disclose that: Global Food Safety Initiative ("GFSI") food safety certifications were necessary

before it could sell produce, Robinson Fresh would sell to Watsonia's existing customers, and Robinson Fresh's objective was to take complete control of Watsonia's marketing and sales. (Id. at 3-7., ECF No. 66.)

However, there is no evidence of a special relationship between Watsonia and Robinson Fresh independent of the Agreement. Rather, the relationship between Watsonia and Robinson Fresh is grower of produce and marketer of produce. (Mem. Supp. Mot. Summ. J. Ex. 1 (Marketing Agreement Ex. B), ECF No. 45-2.) "A buyer-seller relationship does not constitute a 'special relationship . . . .'" Bahringer v. ADT Sec. Services, Inc., 942 F. Supp. 2d 585, 590 (D.S.C. 2013) (internal citation omitted). In Palmetto Linen Service, the Fourth Circuit found no special relationship between an installer of a computerized pump system in a linen service's washers, and the linen service buyer. 205 F.3d at 128-29 (finding that "no special relationship exists between Palmetto and either defendant. Palmetto points to no professional duty on the part of defendants. Nor does Palmetto claim that defendants violated any code provision or contravened any industry standard. Rather, as the district court observed, the relationship between U.N.X. and Palmetto is merely one of vendor-vendee. And a mere buyer may resort only to contractual remedies."). Similar to Palmetto Linen Service, Watsonia fails to identify a

special relationship on the part of Robinson Fresh.[3] Thus, Watsonia may only resort to contractual remedies and the economic loss doctrine bars the negligent misrepresentation claim.[4]

Based on the foregoing, the court grants Robinson Fresh's motion for summary judgment on negligent misrepresentation.

It is therefore

**ORDERED** that Robinson Fresh's motions for summary judgment, docket numbers 45 and 63, are granted.

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
September 28, 2017

---

[3] The negligent misrepresentation claim would also fail even if Minnesota law governs because a special relationship must be found between the parties before recovering under a negligent misrepresentation claim. See Smith v. Woodwind Homes, Inc., 605 N.W.2d 418, 424-25 (Minn. Ct. App. 2000); Safeco Ins., Co. Of Am. v. Dain Bosworth, Inc., 531 N.W.2d 867, 873 (Minn. Ct. App. 1995).

[4] Having found that the negligent misrepresentation claim is barred by the economic loss doctrine, the court declines to address Robinson Fresh's remaining arguments with respect to Watsonia's negligent misrepresentation claim.